Tauressa FLIPPIN, Respondent,

v.

FIRST NATIONAL BANK OF JOPLIN and Aetna Casualty & Surety Company, Appellants.

No. 8223.

Springfield Court of Appeals.

Missouri.

Oct. 31, 1963.

Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 26, 1963.

Rex Titus, Richart, Titus & Martin, Joplin, for appellants.

Herbert Van Fleet, Joplin, Seiler, Blanchard & Van Fleet, Joplin, of counsel, for respondent.

HOGAN, Judge.

Respondent Tauressa Flippin has made claim for the death benefits provided for under the Workmen's Compensation Law as unremarried widow of Eugene Flippin, who suffered a fatal coronary heart attack while employed by the appellant bank as a janitor. The referee for the Division of Workmen's Compensation has made an award of $15,515.00 to Mrs. Flippin, payable in installments as provided by Section

287.240,[1] which has been affirmed, upon review, by the Industrial Commission, and upon appeal by the circuit court. The employer and insurer have appealed to this court as provided by Article V, Section 22, of the Constitution of 1945, V.A.M.S. and Section 287.490(2). Mrs. Flippin is the sole dependent and the accrued sums payable do not exceed the sum of $15,000.00. The liability for the installments not yet payable will terminate in the event of Mrs. Flippin's death or remarriage, and since the award was made to commence on February 8, 1961, it cannot be said that the amount in dispute, independent of all contingencies, exceeds $15,000.00. This court is therefore vested with jurisdiction of the appeal. Snowbarger v. M. F. A. Central Co-operative, Mo., 317 S.W.2d 390, 394–395[5].

Eugene Flippin, who was 42 years old at the time of his death on February 7, 1961, was employed as a custodian or janitor by the appellant bank. The record indicates that he was approximately six feet tall, weighed about 190 pounds, and was in apparent good health. For some time prior to his death, he had been regularly employed as a janitor at the bank and elsewhere. He carried out trash, washed windows, and when the occasion demanded, shoveled snow. At the time of his death, he was employed as a custodian or janitor by both the bank and the Joplin Stockyards; his work at the stockyards was similar to his work at the bank. He was described as an active man. During the last six or seven years of his employment at the bank, he was head custodian or janitor at the bank and spent part of his time supervising the activities of other maintenance employees. However, the record indicates that he always "helped with all" of the work.

During the night of February 6 or morning of February 7, 1961, there was a heavy snow at Joplin. It is stipulated, among other things, that approximately six inches of snow accumulated on the streets and sidewalks. When it snowed, it was the duty of the janitors, including Mr Flippin, to begin work earlier than usual in order to clear the sidewalks adjacent to the bank before the bank opened at 9:30. At the time in question, the bank employed five janitors, and customarily all participated in removing the accumulated snow from the sidewalks. Three snow shovels were provided, and ordinarily three of the janitors shoveled while two rested. There were two sidewalks adjacent to the bank, one on the east and one on the north. The sidewalk on the north side is 10 feet 8 inches in width (north and south) and, we gather, some 108 feet in length (east and west). The dimensions of the east sidewalk are not shown.

The evidence indicated that Mr. Flippin arrived upon the employer's premises at 6:59; this was stipulated on the basis of what the time clock indicated, as no other employee was present at the time. The temperature at that time was 28°F. At 7:25, a second janitor, one Curtis Adams, arrived and found Mr. Flippin working on the north sidewalk. Mr. Flippin was perspiring and appeared to be fatigued. Approximately 108 feet of the sidewalk had been cleared, and Mr. Flippin was still working. Mr. Flippin stated that he had cleared the sidewalk alone, and, accepting Adams' offer to relieve him, procured a bucket of salt and began spreading it over the cleared area.

At 7:37, a third employee, William Bradford, arrived. Bradford and Adams continued to shovel snow while Mr. Flippin spread the salt. Neither Adams nor Bradford heard any complaint of illness or pain from the deceased. A few minutes after Bradford's arrival, however, Mr. Flippin collapsed on the sidewalk and was pronounced dead upon arrival at a local hospital.

On February 10, an autopsy was performed, and the report of this autopsy was received in evidence by stipulation. The autopsy, performed by a physician who did

1. All references are to RSMo (1959) and V.A.M.S.

not testify at the hearing, consisted primarily of a detailed gross examination of the thoracic viscera; the heart was dissected and examined. The pathologist's report, as we understand it, is to the effect that the orifices or openings of the coronary arteries were almost blocked by atherosclerotic plaques, or deposits of cholesterol; there was some thickening of the wall of the right coronary artery, and a complete occlusion of the left coronary artery. The pathologist concluded, on the basis of the autopsy, that the occlusion or blockage of the left coronary artery had been complete, quite rapid, and fatal. The nature of the occlusion is not precisely stated.

At the referee's hearing on this claim, two physicians, both admittedly qualified, gave testimony relative to the cause of Mr. Flippin's death. Neither physician, so far as the record shows, had ever examined Mr. Flippin while he was alive, and neither had participated in the autopsy. Both testified on the basis of their examination of the autopsy report, and in response to hypothetical questions predicated on the facts substantially as we have related them. One physician stated his opinion to be that Mr. Flippin's exertion in clearing the north sidewalk was "the most probable precipitating cause of the attack" : the other was of the opinion that there was "no causal relationship between his work which he did on that morning and his death." As we read the record, both physicians agreed that, within limits, a "heart attack" of this type may be precipitated by intense exertion, although the nature of the mechanism producing death is somewhat problematical; their difference of opinion arose because one physician assumed that "this total amount of work over this elapsed period of time [would be] quite heavy exertion," while the other assumed that the work done by Mr. Flippin "did not subject him to unusual stress beyond what I would expect him to normally do, expect him to be able to do."

The referee made the following findings, omitting the conclusion that Mrs. Flippin was the sole dependent and his conclusion as to the amount of the award:

"* * * that the employee sustained an accident arising out of and in the course of his employment, and that said accident aggravated and combined with pre-existing atherosclerosis of the coronary arteries to accelerate and contribute to cause the employee's death by coronary occlusion on February 7, 1961. Crow v. Missouri Implement Tractor Co. [Mo.], 307 S.W. 2d 401; Williams v. Anderson Air Activities [Mo.App.], 319 S.W.2d 61.

"I find the employee suffered an abnormal strain as a result of activity beyond and different from his normal duties, and that such abnormal strain constituted an accidental event within the meaning of Section 287.020(2) R.S. Mo 1949, as interpreted by the Court in the Williams case, 319 S.W.2d loc. cit. 65.

"In the instant case an 'abnormal strain' may be found in the cumulative effects of overexertion, and was 'unexpected' in the sense that the strain caused by such overexertion was more than the employee contemplated or anticipated.

"It is true that death or disability caused by the usual exertion necessary to the performance of an employee's usual duties, however arduous, does not constitute an accident. De Lille v. Holton-Seelye Co. [334 Mo. 464], 66 S.W.2d 834; Meldrum v. *Sourthard* Feed and Mill Co. [229 Mo.App. 158], 74 S.W.2d 75; and other similar cases cited in Jones v. Remington Arms Co. [Mo.App.], 209 S.W.2d 156. However, overexertion resulting from activities beyond and different from the employee's usual routine may constitute an accident. DeLille v. Holton-Seelye Co., 66 S.W.2d, loc. cit. 836.

"In the instant case, overexertion, that is to say, exertion beyond the usual

routine, is found in the stipulated fact that in approximately twenty-five minutes the employee shoveled, unassisted, a large quantity of snow from a large area, and ordinarily would have been assisted by four men, all *from a large area, and ordinarily would have been assisted by four men, all* five alternately using three shovels in order that two men might periodically rest. * * *"

This award was affirmed, on review, by the Industrial Commission, which added that it considered the recent case of Brotherton v. International Shoe Company, Mo.App., 360 S.W.2d 108, as persuasive. The award was affirmed on appeal by the circuit court.

The appellants' principal contention here is that the Industrial Commission erred in finding that the employee sustained an accident, within the meaning of Section 287.020(2), which defines the word accident as " * * * an unexpected or unforeseen event happening suddenly and violently * * * producing at the time objective symptoms of an injury." The appellants have stated their point in a number of different ways, but the substance of their contention seems to be that the Commission has erroneously extended the term "abnormal or unusual strain" to include job activity which the evidence shows was merely toilsome and fatiguing effort. They also contend that the Commission has erroneously confused the terms "accident" and "injury" in reaching its conclusions, and remind us that the fact of injury is no proof of an accident within the meaning of Section 287.020(2). Both the appellants and the respondent cite Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401, Williams v. Anderson Air Activities, Mo. App., 319 S.W.2d 61, and Brotherton v. International Shoe Co., supra, 360 S.W.2d 108. The respondent contends that these recent cases support the award; the appellants maintain they do not.

█ It is the award of the Commission which is subject to review here, Michler v. Krey Packing Co., 363 Mo. 707, 716, 253 S.W.2d 136, 140, and as we view the Commission's findings, they are in substance ·that the employee's activity on February 7, 1961, amounted to an "unusual or abnormal strain" which constituted an accident, because he exerted himself beyond his usual routine in clearing the snow from a rather extensive area of the employer's sidewalk. What is disputed is the Commission's conclusion that the employee's job activity subjected him to such abnormal stress that he sustained an accident, and in our opinion, the decision clearly is a legal conclusion as distinguished from a purely factual determination. We conclude, therefore, that the award is subject to our review and correction, or reversal.[2]

█ We set to one side appellants' argument that the Commission has confused the terms "accident" and "injury." It is our view that the merits of the appeal do not turn on that question. We agree with the appellants that the "accident" is not the "injury," and that the two are not synonymous. In most concise terms, our Workmen's Compensation Law contemplates the "accident" as a cause and the "injury" as an effect or result. The employer's liability for injuries is limited to " * * * personal injury or death *. * * by accident * *" by Section 287.120(1). The phrase "injury by accident" is commonly found in Workmen's Compensation statutes, and in many jurisdictions the "by accident" requirement is satisfied if the result itself is accidental, though the cause be usual and intended. 1 Larson, Workmen's Compensation, Sections 37.00, 37.20, and 38.10. In Missouri, however, though it was once considered by the

2. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1007–1008, 82 S.W.2d 909, 913; Elsas v. Montgomery Elevator Co., 330 Mo. 596, 603, 50 S.W.2d 130, 133; Williams v. Great Atlantic and .Pacific Tea Co., Mo.App., 332 S.W.2d 296, 298 [2]; Williams v. Anderson Air Activities, supra, 319 S.W.2d at 65–66 [3–5]; Carlton v. Henwood, 232 Mo.App. 165, 174, 115 S.W.2d 172, 178.

courts of appeals to be "within the contemplation of the statute that the accidental event producing the objective symptoms may be the injury itself rather than the means producing the injury * * *", Juhl v. Hussman-Ligonier Co., Mo.App., 146 S. W.2d 106, 108–109, that construction was rejected by the Supreme Court in 1941 in State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 326, 153 S.W.2d 40, 42.[3] There is, however, nothing in the record to show that the Commission considered the "injury" to be proof of the "accident" in this case.

Rather, the narrow and difficult question here is whether the employee suffered any "unusual or abnormal strain" during the course of his job activity, so that it may be said he sustained an "accident" as that term is defined by Section 287.020(2). The plain language of the statute is that the word "accident" means " * * * an unexpected or unforeseen event happening suddenly and violently * * *" but the provisions of Section 287.800, requiring a liberal construction of the Workmen's Compensation Law, have been so enthusiastically implemented that we concede no definition of the word "accident" could be formulated which would be appropriate in all conceivable circumstances. In this case, what is more appropriate is to examine some of the reported cases to determine, if we can, the kind of exertion or job effort which has been considered as an "unusual or abnormal strain."

Here, the employee was a young (42), vigorous man, who customarily worked as a janitor, both for the appellant bank and for the local stockyards. He had been employed at this work for most of the time since February, 1938. So far as the record shows, he felt well almost up to the time of his death; at least he made no complaint of any pain in his chest, or heart trouble. It is apparent from the testimony of the physicians and the autopsy report that Mr. Flippin was suffering from serious heart disease at the time of his death, and it may be inferred that this disease had developed over a considerable period of time. There is nothing in the evidence to show that his condition had been disabling or had hindered him in the normal performance of his duties.

As we have indicated, neither of the two physicians who testified had ever examined Mr. Flippin during his lifetime, nor had they participated in the autopsy. One physician was of the opinion that Mr. Flippin's exertion in shoveling snow had precipitated his death; the other took a diametrically opposed view. It is interesting to note that both physicians made certain assumptions as to the relative effort necessary to shovel snow. The physician who testified affirmatively that Mr. Flippin's death was induced by his work, stated that he would "call it heavy work, if [I] was doing it," and said pointedly that he was "assuming that the rest of his work was lighter than shoveling snow over a specific period of time." The other physician stated that one of his assumptions—in concluding that Mr. Flippin's death was not induced by his work—was "that it did not subject him to unusual stress beyond what I would expect him to normally do, expect him to be able to do."

As to the incident itself, the parties stipulated that between 7:00 a. m. and 7:25, the employee, working alone, cleared the snow from a sidewalk 8 feet 10 inches wide for a lateral distance of 108 feet; the snow was probably six inches deep. At the end of that time the employee was sweating and appeared to be tired; within 15 minutes, he collapsed and died. Ordinarily, he would have been assisted by other employees in this work. He made no complaint of any pain nor of feeling ill before he died.

278

In the case of DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, the deceased employee suffered a ruptured aneurysm while performing his usual work as a carpenter. The Commission refused an award of compensation on the ground that the employee had not been subjected to any unusual strain. The supreme court affirmed the award, and, quoting from the case of Betts v. American Stores Co., 105 Pa.Super. 452, 161 A. 589, stated that "* * * death, caused by overexertion in the course of employment, is an accident compensable under the workmen's compensation statutes. * * *" However, the quote continued:

"* * * True, Dr. Frederick attributed the exhaustion or stroke to claimant's exertion in the performance of his work, and expressed the opinion that, but for the work, it would not have happened at that time; in other words, that the disability was hastened by the work.' * * * Disability, hastened by such exercise, cannot be treated as accidental * * *."

The court did not undertake to define "overexertion," and we cannot read into this case any ruling that fatigue, or even exhaustion, resulting from heavy or toilsome labor is to be considered an "accident" within the meaning of our statute, or that such fatigue constitutes an "unusual or abnormal strain."

In Meldrum v. Southard Feed & Mill Co., 229 Mo.App. 158, 74 S.W.2d 75, the employee was assisting another employee in loading a boxcar with meal sacks which weighed about 100 pounds each. In doing this work, the employee was required to handle five to six sacks per minute. It was necessary to carry the sacks about 16 feet from a conveyer belt to the point where they were deposited in the boxcar. After the employee had loaded 12 to 15 sacks, a period of about 20 to 30 minutes, he became ill, staggered to the loading dock, and collapsed.

The employee died two days later. The evidence showed he had been working in an unprotected boxcar in very cold weather—below zero. He had been in apparent good health; his physician testified in effect that his death had been caused "undoubtedly, from the exertion, principally, and from the exposure, which brought on pleurisy, and caused the breakdown of the heart." The Industrial Commission found that the employee had sustained an accident by being unusually and unduly exposed to cold weather and through overexertion.

The court of appeals reversed the award, pointing out that our Workmen's Compensation Law requires not only an injury but an accident, and stated, 229 Mo.App. at 165–166, 74 S.W.2d at 80:

"[6, 7] There was evidence in this case that deceased's condition was due to overwork. But heavy work, alone, causing exhaustion, a stroke or 'spell' unaccompanied by any mishap, abnormal occurrence or event, such as extra exertion, a strain or a blow, is not sufficient to constitute an accident within the meaning of the Workmen's Compensation Act."

In the case of Juhl v. Hussman-Ligonier Co., supra, 146 S.W.2d 106, the claimant suffered a coronary occlusion after he filled a five-gallon paint bucket with water at the factory where he worked and carried it a distance of about 60 feet. It was indicated that he had been suffering from arteriosclerosis at the time he suffered his attack. He had been in apparent good health before the alleged accident, and it was his testimony that he had carried the bucket 60 to 80 feet and "all of a sudden I felt this piercing pain in my chest."

The attending physician testified that in his opinion the lifting of the bucket of water and carrying it was a precipitating factor of the coronary occlusion.

The Commission found and ruled that the employee, at the time of the alleged accident, was not subjected to any unusual strain or exertion, but was doing the usual and ordinary work incidental to his employ-

ment and that the disability was a result of natural causes.

The court of appeals reversed the finding of the Commission, but in so doing held it to be within the contemplation of the statute that the actual event producing objective symptoms might be the injury itself rather than the means producing the injury.

As we have pointed out, the opinion of the court of appeals in the Juhl case was quashed on certiorari to the Supreme Court in State ex rel. Hussman-Ligonier v. Hughes, supra, 348 Mo. 319, 153 S.W.2d 40, as being in conflict with the ruling in DeLille v. Holton-Seelye, supra, 334 Mo. 464, 66 S.W.2d 834. The Supreme Court compared the Juhl case and the DeLille case, remarking that in neither case was there any unusual occurrence such as a slip or fall or abnormal strain. It was pointed out that the Compensation Act was not intended to make the employer an unlimited insurer, and the court reiterated that proof of an "accident" is necessary.

In Keller v. Bechtel, McCone, Parsons Corporation, Mo.App., 174 S.W.2d 925, the employee was engaged in digging a ditch. The ditch was about four feet deep and was knee-deep with mud. The employee was shoveling mud and dirt over the side of the ditch a distance of about five or six feet. He was required to throw the mud hard to get it off the shovel. Shortly before he stopped working for the day and immediately after throwing out a shovel of mud, he felt a pain and cramp in his right side. He thereafter developed a hernia. The Commission refused to award compensation.

In affirming the Commission's action, the court of appeals held that it was incumbent upon the claimant not only to show that his injury came upon him as a result of or during the course of the work in which he was engaged, but to show that the injury was the result of an accident. Remarking that there was no evidence that the claimant exerted any more power or any greater strain than the normal performance of his work required, and that nothing unexpected or unusual occurred suddenly and violently, the court held that injury had not been sustained as the result of an "accident."

In Higbee v. A. P. Green Fire Brick Company, Mo.App., 191 S.W.2d 257, the employee made claim for compensation for a hernia. In the course of the employee's duties, it was necessary for him to obtain oil from drums which were heavy; each drum weighed about 452 pounds. Now and again it was necessary for the employee to set the drum upright in order to obtain the oil. While lifting one of the drums to an upright position, the employee felt a sharp pain in his lower groin and a sickening feeling. The Commission held that the employee did not sustain an accident and the finding was affirmed by the circuit court.

Again, the court of appeals affirmed the award, remarking that there was no mishap, either in the act of lifting or in the environment, and that there was no proof that the employee used any more exertion or greater strain than was usual and ordinary in lifting a barrel of oil.

So, in each of these cases, the employee was exerting himself in that he was expending a large amount of energy in the performance of heavy, toilsome and perhaps exhausting labor, but in no case could any "accident" be found.

By contrast, in the case of State ex rel. United Transports v. Blair, 352 Mo. 1091, 180 S.W.2d 737, the employee applied unusual force to a wrench to loosen a frozen lug which held a tire on a wheel; in Crow v. Missouri Implement Tractor Co., supra, 307 S.W.2d 401, the weight of a heavy piece of machinery was suddenly shifted onto the upraised arms and shoulders of the employee, and the Supreme Court held that an abnormal strain could be classified as an accident although it was not preceded or accompanied by a slip or fall; in Williams v. Anderson Air Activities, supra, 319 S.W.2d 61, the employee was attempting to lift a heavy drainboard and, placing

his hands on his knees, rose on his toes and gave "an extra surge of power" from underneath the drainboard in order to lift it with his back; in Brotherton v. International Shoe Company, supra, 360 S.W.2d 108, the employee was literally wrestling with a long pipe wrench to which a steel pipe extension had been attached. Working from beneath the wrench, the claimant pulled down and was bounced up by the recoil of the wrench, pulled down again, slipped on the floor, and was jerked upward. The common thread which runs through these last four cases is that in each case, either because of the employee's precipitate outburst of voluntary effort or through the application of some external force, the employee was subjected to an abrupt and intense bodily stress which caused his disability. Thus, the finding that there was an "unusual or abnormal strain" could, in each case, be equated with the requirement that there be an "event happening suddenly and violently."

It is precisely in this respect that we believe the Commission has fallen into error in the instant case. The award purports to find the "unusual or abnormal strain" in the "cumulative effects of overexertion." We believe the Commission, in so finding, has extended or broadened the definition of the statutory word "accident" further than the authorities justify upon the facts of this case. We do not know, from this record, how hard Mr. Flippin worked on the morning of his death, but that is not controlling. The false step—if we may call it that—in the Commission's process of inference and conclusion lies in the deduction that hard work, producing fatigue or even exhaustion, in itself constitutes an "unusual or abnormal strain." There is no evidence of any sort to show the manner in which Mr. Flippin did his work just before he died; his physical movements and the pace at which he worked are matters which were unobserved and unreported. There is no basis whatever for concluding that, in the course of his work, Mr. Flippin was subjected to any abrupt and intense physical stress, either through his own effort or some outside force, or, in short, to any "unusual or abnormal strain." In our view, the Commission erred in finding that he had sustained an accident within the meaning of the statute.

The judgment of the circuit court affirming the order of the Industrial Commission is therefore reversed, and the circuit court is directed to set aside its judgment herein and enter a new judgment reversing the order of the Industrial Commission.

RUARK, P. J., and STONE, J., concur.