**Clyde BESS, Plaintiff-Appellant,**

v.

**COCA–COLA BOTTLING COMPANY OF ST. LOUIS, Defendant-Respondent.**

**No. 33998.**

St. Louis Court of Appeals, Missouri.

June 15, 1971.

Fred Roth, St. Louis, for plaintiff-appellant.

Luke, Cunliff, Wilson, Herr, Chavaux & McCluggage, St. Louis, for defendant-respondent.

DOWD, Judge.

A workmen's compensation case involving occupational disease and accident. The employee's amended claim was as follows: "Employee contracted and/or aggravated pre-existing tuberculosis from the conditions of his employment in which he worked since March of 1959 as a sander and painter of Coca Cola Bottle Machines (Dispensing Machines), where there was no ventilation and he was not provided with any protective devices, and the employee is now permanently disabled." The claim was denied by a referee and the Industrial Commission. The Circuit Court affirmed the award denying compensation. The employee appeals.

In its final award denying compensation and affirming the award of the referee, the Industrial Commission stated: "We specifically find from all of the competent and substantial evidence on the whole record that the subject employee was suffering from chronic pulmonary tuberculosis, an ordinary disease of life which had no direct causal connection with his working conditions and that said disease was not aggravated by an 'accident' as that term is contemplated by the Missouri Workmen's Compensation Act." We affirm.

At the hearing before the referee before any testimony was adduced the following discussion took place:

"THE REFEREE: All right. Let's proceed.

"MR. ROTH: [Attorney for the employee] For the record, I think Mr. Wilson ought to advise the Court whether the company was covered with respect

to occupational disease coverage at the time of the alleged accident of December, 1963?

"MR. WILSON: [Attorney for the employer] Yes, sir, they were.

"MR. ROTH: Do I understand that the Coca-Cola Bottling Company had accepted and was operating under the occupational disease act?

"MR. WILSON: Yes.

"THE REFEREE: Is this a matter of accident or occupational disease?

"MR. WILSON: Allegedly, the accident deals with occupational disease.

"THE REFEREE: Maybe you ought to tie it up more exactly so there will be no question about it later on."

To establish his claim, the employee testified as follows: He was 40 years old and began working for the employer in March, 1959 as a truck helper in delivering Coca-Cola machines. He performed this work the balance of 1959 and part of 1960. From the Fall of 1960 to about December 22, 1963 he sanded and spray-painted the employer's dispensing machines. He used a sanding machine and worked inside a sanding booth which was a small room covered on all sides. Its dimensions were about 6 feet wide, 12 feet high and 8 feet long. There was no exhaust fan inside this room but he was provided with a mask which fit over the mouth and nose. The first mask furnished by the employer was used by the employee for about a month. It had disposable filters but the employee had to use the same filter for a month. He was then furnished a new mask which contained disposable filters. He would sand eight hours a day for two days a week and then paint for three days a week. After sanding his sputum would be the same color as the paint he was sanding. The paint would cause his nostrils to stick together. The paint room was 6 feet wide, 8 feet high and 8 feet long with one exhaust fan in the rear of the room.

The employee first encountered difficulty in breathing and chest pains in January of 1963 and consulted his family doctor. He thought he had a cold. His back and chest hurt and he had a fever. He saw this doctor four times a week; and from January to June, 1963 he received 120 penicillin shots. The doctor told him he had the symptoms of pneumonia or influenza. He continued to run a fever during this period. The doctor took no x-rays or sputum tests. He had hot flashes and night sweats from January to June, 1963 and would become very tired but continued sanding and painting during 1963. He lost about three or four days from work that year.

He learned he had tuberculosis in December, 1963 when another doctor took x-rays. December 27, 1963 is the last day he worked for the employer. He was a patient at Koch Hospital from December 30, 1963 to October 30, 1964 where he was treated by Dr. Ellis Lipsitz, a chest specialist. His condition improved at the hospital. Dr. Lipsitz's diagnosis at time of discharge from Koch Hospital was: "Chronic pulmonary tuberculosis, far advanced, quiescent, 0 months, * * *." His right lung collapsed in February and June, 1965 and on both occasions he was treated at Jewish Hospital.

Dr. Lipsitz's final diagnosis was: "Chronic pulmonary tuberculosis, far advanced, inactive * * * work capacity nil, due to pulmonary insufficiency." He rated the employee's permanent-partial disability between 85 and 90 percent. He stated that his condition will not improve and if he gets an infection his condition will get progressively worse because of the emphysema present. He further testified that plaintiff's tuberculosis would be aggravated by the inhalation of paint and paint dust. He also stated that the x-rays taken at Koch Hospital indicated that the tuberculosis had

existed for a long time—for a period of six months to five years.

Dr. Lipsitz further testified that you have to get tuberculosis from somebody else; it is both an infectious disease and contagious disease. It is a disease common to man. It is not contracted directly from dust or spray painting.

A woman who had tuberculosis lived with the employee and his wife prior to March, 1959 and also lived with them for three months in 1967.

Before working for the defendant, the employee owned and operated a restaurant for nine years. He operated the restaurant seven days a week from 5:00 a.m. to 8:00 p.m. While operating the restaurant, he had frequent colds and for one month he experienced night sweats.

The employee did not work from December 27, 1963 until January, 1967 when he started working as a service station attendant. He works six nights a week, eight hours a night selling gasoline. This is the only duty he has at the station; he services about 25 automobiles a night. He had been working at this job nine months at the time of the hearing.

He has experienced a great loss in weight. The employee listed extensive medical expenses.

It is obvious from the claim filed and the discussion by the attorneys and referee prior to the trial that the employee's claim was for an occupational disease and not for an accidental injury. However, on review before the commission and on this appeal the employee contends that he is entitled to recover either for an accidental injury or under the occupational disease statute (§ 287.067). We shall discuss both contentions.

The commission specifically found that the tuberculosis "was not aggravated by an 'accident' as that term is contemplated by the Missouri Workmen's Compensation Act." We agree.

"Accident" is defined by § 287.020(2), RSMo 1969, V.A.M.S. This section reads:

"2. The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

The terms "injury" and "personal injuries" are defined by subsection 3 of the above section as follows:

"3. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The said terms shall in no case except as herein provided be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the workman is at work."

Our Supreme Court in an en banc decision in McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629, based upon an analogous set of facts, rejected the contention that the inhalation of plaster dust over a period of months constituted an "accident" within the meaning of the Workmen's Compensation Act, and held that the employee was not precluded from maintaining a common law action against the employer. In McDaniel, supra, the plaintiff was employed to knock off old plaster on the ceilings and walls in the remodeling of hotel rooms. The doors in these rooms were closed. The work caused excess fog, dust, sand, lime and dirt to permeate the air of the room in which he was working and much of the time there was no ventilation in the room. He was not furnished with a respirator or mask although he requested one. When he entered the employment, he was 38 years of age and in good health although afflicted with some nasal obstruc-

tions. After several months of this work, plaintiff developed a cough, a cloudy deposit formulated in his mouth and his nose would be stopped up. After working on this job for nearly a year, the plaintiff suffered pains in his chest. After consulting a doctor, it was determined that he had an abscess in the right lung; later the right lung had to be removed. It was contended that plaintiff's injuries resulted from an accident in the course of his employment. The court in answering this contention stated at 1.c. 635:

> "The evidence in this case wholly fails to show an 'accident' within the meaning of the Workmen's Compensation Act as previously construed by this court. The dust which filled the air plaintiff was required to breathe and the dust which irritated his lungs and brought about the disease and injury of which he complains was not the result of any 'accident' or any unexpected or unforeseen event happening suddenly and violently with or without human fault. * * * The presence of the dust in the air was caused by the usual and normal progress of the work. The evidence wholly fails to show that its presence was due to any unusual, unforeseen or unexpected event arising suddenly and violently in the progress of the work. The presence of the dust in the air and its contact with plaintiff's body and lungs and the results there produced were not the result of an 'accident' as that term is used in the Workmen's Compensation Act * * *."

See, also, Rush v. Swift & Co., Mo.App., 268 S.W.2d 589; Gillett v. Prairie Brass & Metal Co., Mo.App., 179 S.W.2d 494; Rogers v. Sikeston Compress & Warehouse Co., Mo.App., 248 S.W.2d 672.

The McDaniel case was recently cited with approval by our Supreme Court in an en banc decision in Harryman v. L & N Buick-Pontiac, Inc., Mo., 431 S.W.2d 193, 197.

The contention of "accident" was also rejected recently by this court in Liebrum v. Laclede Gas Company, Mo.App., 419 S.W.2d 517. In Liebrum the employee claimed that a disabling heart disease was aggravated by the inhaling of ammonia fumes in his work. The employee's work entailed the servicing of air conditioners and it was necessary to purge the pipes which contained ammonia gas fumes and as a result he inhaled the fumes. The court held that the employee's exposing himself to ammonia did not constitute an accident as defined by § 287.020. The court in Liebrum stated at 1.c. 520[1, 2]:

> " * * * The commission found Mr. Liebrum's acts were 'unexpected and unforeseen as to the dangerous degree, extent and result thereof.' True, but that will not support a recovery for statutory accident, because it is the event—not just the result—that must be unexpected and unforeseen. Thus, where a deliberate act or series of acts causes an unexpected physical injury, as here, there is no compensable accident. See Tines v. Brown Shoe Co., Mo.App., 290 S.W.2d 200 [1–3], and the oft-cited case of State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40 [4]."

While it is true that our courts have found accidental injuries in cases where the event did not take place as one occurrence, generally it has been where there is present some abnormal and unforeseen condition in the employment arising more or less suddenly which can be pointed out as a definite positive factor in bringing about the compensated injury. Or where there was a series of accidental injuries or occurrences culminating in the same consequential result, it is proper to hold that an accidental injury was sustained within the meaning of the Act. Gillett v. Prairie Brass & Metal Co., supra, 179 S.W.2d 1.c. 498[1]; Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S.W.2d 918, 920.

The employee cites Vogt v. Ford Motor Co., Mo.App., 138 S.W.2d 684; Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S.

W.2d 580; McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149; and, Vogt v. Lambert Pharmacal Co., Mo. App., 218 S.W.2d 788. All of these cases were decided before McDaniel v. Kerr. Also, all of these cases are distinguishable upon their own peculiar facts.

■ Here the evidence shows that there was no unexpected or unforeseen event happening suddenly and violently producing at the time objective symptoms of an injury. The employee was exposed to these working conditions for over three years. The paint dust and paint fumes which were present in the air were caused by the usual and normal conditions of the work. The presence of the paint dust and paint fumes in the air and the resulting effect on plaintiff's body and lungs were not the result of an "accident" within the restrictive statutory definition of an accident as contained in the Workmen's Compensation Act.

■ We also disagree with the employee's contention that he is entitled to recover under the occupational disease statute. By paragraph 1 of § 287.067, V.A.M.S., enacted in 1959, the legislature defined occupational disease. This section reads:

"1. In this chapter the term 'occupational disease' is hereby defined to mean a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be

fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

We believe that it is clear from this statute and from the employee's medical evidence that tuberculosis is not an occupational disease. The second sentence of § 287.067 specifically excludes "ordinary diseases of life to which the general public is exposed." Then the statute provides that "[t]he disease must be incidental to the character of the business." The employee's doctor testified that tuberculosis is a disease common to man and that it is both an infectious disease and a contagious disease and that "you have to get the infection (tuberculosis) from somebody else." He also testified that it is not contracted directly from dust or spray painting and that the employee's tuberculosis existed for a long time—for a period of six months to five years.

This court in Bolosino v. Laclede-Christy Clay Products Co., Mo.App., 124 S.W.2d 581 in an opinion written by Judge Bennick stated at l.c. 583:

"There is no disagreement about the fact that tuberculosis in and of itself is not an occupational disease, that is, a disease which is the natural incident or consequence of an employee's long continued exposure to the peculiar hazards of a particular employment. Typical of occupational diseases are silicosis and pneumoconiosis, which are evidenced by pathological changes in lung tissue attributable to the effects of the inhalation of minute particles of dust over long periods of time. Tuberculosis, on the

other hand, is an infectious disease, attributable solely to tubercular bacilli, and in nowise restricted to persons who work at any particular character of employment. However it is recognized that any factor which lowers the resistance of the individual or brings injury to his lung structure will render him more susceptible to tubercular infection, and so it is that true occupational diseases frequently terminate in tuberculosis, in which event the employee's ultimate condition is to be considered upon the question of the amount of compensation that he shall receive. Evans v. Chevrolet Motor Co., 232 Mo.App. 927, 105 S.W.2d 1081, [citations omitted]. But before tuberculosis may be included in the injury for which compensation may be awarded, it must first be shown that long continued exposure to the peculiar hazards of the employment brought on some pathology in the lung tissue which rendered the employee peculiarly susceptible to tuberculosis. * * *"

Here the medical evidence failed to show that the employee's working conditions brought about some pathology in the lung tissue which rendered him peculiarly susceptible to tuberculosis.

The employee suffered from an ordinary disease of life and any aggravation of that condition by non-accidental conditions of his work would not constitute the aggravated physical condition as occupational disease. This court in Liebrum v. Laclede Gas Company, supra, stated at 419 S.W.2d l.c. 522: "* * * Almost any working condition can adversely affect an ordinary illness. A workman's pre-existing tuberculosis, pneumonia or even a common cold could well be aggravated into disability by the conditions of his work. The ensuing illness would not thereby become an occupational disease. * * *"

The judgment of the Circuit Court is affirmed.

BRADY, P. J., and WOLFE, J., concur.