**Ernest Herbert LAWSON (Employee), Respondent,**

v.

**The VENDO COMPANY (Employer) and the Hartford Accident and Indemnity Company (Insurer), Appellants.**

No. 23418.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1961.

Leo T. Schwartz, Kansas City, Ned B. Bahr, Roland D. Gidney, Kansas City, of counsel, for appellants.

Alder & Morrison, John J. Alder, Kansas City, for respondent.

MAUGHMER, Commissioner.

Under the Missouri Workmen's Compensation Law an employee claiming a compensable injury must give timely notice thereof to his employer. Failure, without justification, to do so may result in avoidance of the claim. Determination of this appeal requires consideration of such notice requirements and their application to the facts here.

Ernest Herbert Lawson, plaintiff, a long time employee of defendant The Vendo Company, Kansas City, Missouri, claims that on February 12, 1958, while moving a "steel skid" loaded with material, "it slipped and jerked me down", resulting in an injury to his back  He worked on the following day, but said he was unable to go to work on the 14th because of pain in his back and legs. He was "off work" thereafter for 21 weeks. He called Dr. James W. Downey, M.D., who came to plaintiff's home on February 14th and gave him treatment, consisting of local heat, liniment and rest. Dr. Downey came to the home again on February 19, and then called Dr. Robert Drisko, an orthopedic surgeon, into consultation. On March 11, 1958, plaintiff was admitted to St. Mary's Hospital. A myelogram was done and on March 14, an operation was performed in which one spinal disc was removed and a stabilization of the spine was inserted where the disc had been. He remained in the hospital until March 23, 1958.

Plaintiff testified that after the injury he suffered immediate pain for two or three minutes and then continued working that day and the next. He said he did not report the accident or injury to the foreman because "I didn't think I was injured". It is conceded that plaintiff never did notify any company representative of his alleged injury either personally or through some other person at his specific request. He returned to work for The Vendo Company on June 23, 1958.

Gus L. Anderson, shop foreman, stated that plaintiff worked on February 13th and 14th, 1958, and did the work without complaint; that neither plaintiff nor any one else ever reported to him that plaintiff had sustained an accident or suffered an injury.

Dr. James W. Downey, M.D., testified that he treated plaintiff in his home on February 14th and February 19th; that he found "acute spasm of the back with pain radiating down the right leg"; that after consultation with Dr. Drisko the man was hospitalized and operated. He said that plaintiff told him he had injured his back while working at The Vendo Company. Dr. Downey stated that since, in his opinion, hospitalization was necessary he became concerned as to the source of payment for the hospital and medical bills. Plaintiff told him he did not know if Vendo had insurance. Dr. Downey declared that on the 17th or 18th of February, 1958, he called Vendo Company to inquire if it was prepared,

through insurance or otherwise, to meet these expenses. His telephone call was referred to the personnel office. He talked to someone there whose name he did not recall. Dr. Downey said he told that person "that I was treating Mr. Lawson and that he was sick at home and I wanted to know if they had any insurance, that he was going to have to go to the hospital * * * but I wanted to know if they had any insurance to cover a man that was hurt that worked for them that went to the hospital". The doctor said they asked how he got hurt and "I told them this same thing that he told me"; "that he was moving a steel skid off of a box and that it slipped and he twisted his back". The doctor said the company personnel man told him "We have no record of Mr. Lawson being hurt here". "He is going to have to take care of himself", "he'd have to get a lawyer to help him see that it was taken care of".

Mr. George P. Luger, Vendo Company employee, and during February and March, 1958, in charge of the personnel office, testified. He said that Dr. Downey called and talked with him over the telephone about "the hospital bills of Mr. Lawson"; that he told him the company had no knowledge of Lawson having suffered a back injury at Vendo; that "if it did happen at Vendo, it would be handled through the Workmen's Compensation; if it was away from work, nonoccupational, it would be handled through group insurance". Mr. Luger stated that as best he could recall this conversation with Dr. Downey took place on March 11, 1958, (26 days after the alleged accident). Mr. Luger also stated that Dr. Drisko telephoned him two or three days later about the same matter and he told Dr. Drisko substantially the same as he had told Dr. Downey.

A claim for compensation was duly filed and a hearing held before a referee which resulted in a finding for claimant with an award in his favor. An application for review by the Industrial Commission of Missouri led to a two to one decision denying compensation. The Commision found: (1) Claimant sustained an accident on February 12, 1958, arising out of and in the course of his employment with The Vendo Company; (2) the employee failed to give the employer notice of the time, place and nature of the injury, failed to show good cause for failure to give such notice and failed to prove that the employer was not prejudiced by the failure to receive the same; (3) that the conversation between Dr. Downey and Mr. Luger occurred on March 11, 1958; (4) that Dr. Downey in his telephone conversation with the employer was not acting as the agent or attorney in fact of employee, nor had the employee requested him to advise the company of the injury but rather the doctor was acting on his own initiative and for his own purposes; that the doctor's conversation with Mr. Luger concerning the accidental injury was that of an interloper or mere volunteer and "information garnered from extraneous scuttle-butt and rumor does not constitute the notice envisioned by Section 287.420, R.S.Mo., 1949 [V.A.M.S.]"; (5) good cause was not shown for failure to give notice; (6) the employee did not prove that the employer was not prejudiced by the failure to give notice.

Plaintiff appealed to the Circuit Court. The Circuit Court in its judgment recited that the principal issue on appeal concerned that portion of the Commission's award holding that the employee failed to give employer notice of the time, place and nature of the injury, failed to show good cause for such failure, and failed to prove that the employer was not prejudiced by such failure. The Circuit Court then found "the employer *had* 'notice' within the meaning" of the statute, reviewed the evidence, pointed out that the Commission found that there was an accident arising out of Lawson's employment from which finding defendant did not appeal and concluded by reversing the award and remanding the cause "to the Industrial Commission for a rehearing on the sole issue of the evaluation of the nature and extent of disability".

Defendants perfected a timely appeal from the Circuit Court judgment, asserting error because (1) the Commission award was supported by competent and substantial evidence and was not clearly contrary to the overwhelming weight of the evidence; (2) the court judgment erroneously holds that the Dr. Downey telephone call constituted "notice" and (3) the court erred in remanding on the sole issue of disability evaluation rather than for a rehearing de novo.

The actual facts as to notice are not really disputed except as to the date of Dr. Downey's telephone conversation with Mr. Luger—Downey saying it occurred on February 17th or 18th, five or six days after the alleged accident, and Luger saying it occurred on March 11th, 26 days thereafter. In either event this conversation which admittedly took place, was within the statutory 30 day limitation for notice. The Commission found it took place on March 11th, and there is substantial, credible evidence supporting such finding. We shall consider it as having been on the latter date.

■ The Commission found no good cause was shown for plaintiff's failure to personally give notice and that plaintiff "did not attempt to prove that the employer was not prejudiced by failure to give notice". We have here a claimant employed by Vendo for more than six years who had reported and received treatment for prior injuries, but who never did personally report this one. We agree no good cause for such failure was shown and the Circuit Court did not find otherwise. The crux of this case—the issue upon which both the Commission and the Circuit Court decided the controversy—is whether or not the Downey-Luger telephone conversation amounted to notice as required by the statute. The Commission said it did not. The Circuit Court held that it did. Where, as here, the fact that a conversation actually took place is conceded and the substance of it is not really disputed, determination if it amounted to legal "notice", poses pri-marily a legal question for the courts, rather than a weighing of the evidence, a function which rests essentially with the Commission.

Workmen's Compensation is a type of social insurance designed to insure prompt payment of benefits to injured employees regardless of who was at fault in the accident. The cost of such work injuries is regarded as a part of the expense of production. It is universally understood that both the adjective and substantive law of Workmen's Compensation take their tone from the beneficent and remedial character of the legislation.

Section 287.420 RSMo 1949, V.A.M.S., Workmen's Compensation, provides:

"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, shall have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive such notice. No defect or inaccuracy in such notice shall invalidate the same unless the commission shall find that the employer was in fact misled and prejudiced thereby".

We include three quotations from Larson, Workmen's Compensation Law, Vol. 2, Chapter 15, Notice and Claim Periods: "Since the purpose of the notice requirement is to enable the employer to protect himself by prompt investigation and treatment of the injury, failure to give formal notice is usually no bar if the employer had actual knowledge or informal notice sufficient to indicate the possibility of a compensable injury, * * *" (p. 251). "The purpose is dual: first, to enable the employer to provide immediate medical diagnosis and treatment with a view to mini-

mizing the seriousness of the injury; and, second, to facilitate the earliest possible investigation of the facts surrounding the injury". (253). "The present tendency is to excuse lack of notice whenever the employer acquired actual knowledge of the accident, no matter how he acquired it." (p. 254). The footnote to the last quotation refers to the opinions in Swift & Company v. Rolling, 252 Ala. 536, 42 So.2d 6, holding that where the injury occurred "under the eye" of employer's foreman, the employer had sufficient actual notice even though the statute required written notice within five days after the injury, and to Miller v. Peterson Const. Co., 229 Minn. 22, 38 N.W.2d 48, ruling that where a carpenter, at time he suffered paralysis of vertebral disc while lifting a staging, told his foreman that he had such a pain in his right leg that he would have to quit and go home, the foreman knew as much about the occurrence as the carpenter himself at the time of injury and that the statutory requirement as to knowledge or notice to employer had been complied with.

Appellants in their brief lean heavily on the opinion of this court in Brown v. Douglas Candy Co., Mo.App., 277 S.W.2d 657. But in that case the injury occurred December 15, 1952, and the employer was not notified until March 25, 1953, exactly 100 days later, 70 days in excess of the 30 days' maximum provided by the statute. Therefore for claimant to prevail it was necessary for her to show (a) there was good cause for failure to give such notice or (b) the employer was not prejudiced thereby. The Commission found for claimant, the Circuit Court affirmed, but this court reversed outright, ruling that neither (a) nor (b) was established. However, this court on page 662, said: "It is the well established law in this state that the requirement of written notice is a reasonable provision for the benefit of the employer, but the giving of such notice is not an unconditional prerequisite to recovery. The purpose of the statute is designed to give the employer timely opportunity to investigate the facts pertaining to whether an accident occurred, and if so, to give the employee medical attention in order to minimize the disability. However, if the employer had actual notice or knowledge of the accident, then he could not be prejudiced by failure to receive written notice; or if there is an affirmative showing of 'good cause' for failure to give the notice, then the claimant will not be denied relief. (citing numerous cases)". Also in this case it was squarely ruled that claimant carried the burden of showing defendant was not prejudiced by the failure to give notice.

■ Defendants have invited our attention to various opinions which they say hold, first, whether or not notice was given is a question of fact. We agree this is true respecting evidence as to what events or occurrences actually took place and if there is a disagreement thereon, requires weighing the evidence. But once the facts are established, a determination if statutory notice results is a question of law. Second, the facts here do not result in a "notice" within the requirement of the statute. In Moscicki v. American Foundry Mfg. Co. et al., Mo.App., 103 S.W.2d 491, relied upon by appellants, hearsay evidence was admitted to the effect that the claimant told his fellow workman to report his injury to the foreman and he did so. However, the foreman denied that any such report had been made. The court, on page 493, observed that if this evidence of a report "had been believed by the commission, it would unquestionably have served to show actual notice to the company. * * *"

In Basil v. Cyr et al., D.C., 130 F.Supp. 642, the employee's wife, two days after the alleged accident, called the foreman and notified him that her husband was sick, had to have a doctor and would not be at work. This was ruled no notice.

In Good Impressions, Inc. et al. v. Britton, D.C., 169 F.Supp. 866, the claimant's wife called the employer on the fol-

lowing morning, reported that her husband had been ill the night before, that the doctor said he had a heart attack and that he was in the hospital. Both the commission and the court held (we think properly) that such report was neither legal nor actual notice of an accident or injury sustained on the job. These cases are clearly distinguishable from our case on the facts.

In Littleton v. Grand Trunk Ry. Co., 276 Mich. 41, 267 N.W. 781, also cited by appellants, the court commented on the essential elements of notice and said: "He gave no details of the accident or how or where he was bumped. It was not *such a notice as would reasonably put an employer on inquiry.* The provision of the law that timely notice must be given is purposeful, and, while no niceties of expression are required and the notice may be oral or written, it must be of such a nature so as to *reasonably inform the employer that the employee has sustained a compensable accident*". (Italics added).

■ We agree with appellants' statement as to the scope of appellate review in this case. If there is competent and substantial evidence supporting the Commission's award, including all reasonable inferences deducible therefrom, it should be affirmed. A court may not substitute its own judgment on the evidence, including questions of credibility for that of the Commission. But the court may set aside or modify any award which is clearly contrary to the overwhelming weight of the evidence, or where the award is without substantial evidentiary support or results in a misinterpretation and misapplication of the law to facts which are substantially uncontroverted.

■ We shall now endeavor to apply these principles to our case. The statute says written notice shall be given as soon as practicable, but not later than 30 days after the accident. However, it has long been held and quite universally, that the notice need not be in writing, nor need it be given personally by the claimant. The

statute then provides in effect that an untimely notice, that is, notice given more than 30 days after the occurrence, will be effective if (a) good cause for such failure was shown *or* (b) the employer was not prejudiced thereby. The Commission found, we agree and the Circuit Court did not disagree, that no good cause was shown for claimant's failure to personally give the notice. That leaves two further questions. First, did the Downey-Luger conversation of March 11, 1958, the date on which the Commission, as trier of the facts found it took place, amount to notice within legal purview of the statute? If it did, then timely notice was given. Second, even if this Downey-Luger discussion did not measure up to all the requirements of notice, is it, nevertheless, sufficient because the employer was not prejudiced?

■ We do not believe it is required that the notice be given personally and directly by the employee. The statute does not so state. Suppose claimant's attorney had notified the company. The attorney probably would have prepared and submitted a written notice, specifically giving the date and describing the slipping and falling. Was the notice given by the doctor any less effective in reasonably informing the company that the employee had sustained a compensable injury? The notification given was by the claimant's own doctor, it described the accident as plaintiff had described it to the doctor, the diagnosis of the injury was given, the company was informed that hospitalization was required and an operation was about to be performed. The record does not show that the doctor gave Mr. Luger the exact date of the accident, but the company made no attempt at the time to secure this information. Would a report by plaintiff or by his lawyer have given any further or additional information except that such notice might have been in more technical compliance with the statute and would have been by plaintiff personally or by his legal rather than by his medical representative. The statute specifically declares: "No defect or

inaccuracy in such notice shall invalidate the same unless the commission shall find that the employer was in fact misled or prejudiced thereby". Larson says the purposes of the notices are two-fold: (1) to enable the employer to provide medical diagnosis and treatment, thereby minimizing the injury, and (2) to facilitate an early investigation of the facts surrounding the injury. Plaintiff here promptly sought and secured medical attention. So far as the record is concerned it was competent medical attention. The employer, although notified within the statutory 30 days, made no effort to furnish medical attention, for either examination or treatment. The company apparently investigated the matter. In any event their foreman and plaintiff's fellow employee testified at the hearing before the referee. We find that the evidence shows rather overwhelmingly that defendant suffered no prejudice in either of these respects. In addition, the notice was within the required 30 days.

We are in agreement with the Commission's statement that "information garnered from extraneous scuttle-butt and rumor does not constitute the notice envisioned" by the statute, but in our opinion that statement is not applicable to the facts here. In this case the notice was to a competent, responsible employee who was in charge of personnel. The report was made by the claimant's own doctor and not by a neighbor or distant relative. It was not based on rumor but came after a medical examination, treatment and diagnosis. It was not an extraneous or incidental report but specific, purposeful and concerned this certain employee and this specific injury. We hold that the Downey-Luger telephone conversation, as to both timeliness and substance, constituted notice within the meaning of Section 287.420, supra, and rule further that defendants' rights and opportunities to act in the premises were neither impaired nor prejudiced by any technical defects in the notice.

Appellants say that even if this case is reversed, it should be remanded for a hearing de novo rather than "for a rehearing on the sole issue of the evaluation of the nature and extent of disability", as directed by the Circuit Court.

Missouri Rules of Civil Procedure—Appellate Courts—Procedure, 83.13(c), V.A.M.R. provides: "The appellate court shall examine the transcript on appeal and, subject to the provisions of paragraphs (a) and (b) of this Rule, award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law. Unless justice requires otherwise, the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears".

At the referee's hearing it was admitted that on February 12, 1958, The Vendo Company was a major employer, operating under and subject to the Missouri Workmen's Compensation Law, that on said date its liability was fully insured by the defendant Hartford Accident & Indemnity Company, that on said date plaintiff was an employee covered by such law, that a claim had been timely filed but no compensation or medical aid had been furnished. It was disputed that due and timely notice had been filed, and that any accident or injury arose out of and in the course of such employment. Evidence was fully heard on these disputed issues. Both the Referee and the Commission found that plaintiff, on February 12, 1958, sustained a compensable injury arising out of and in the course of his employment. The only issue appealed to the Circuit Court was on the notice question. The only other essential issue not admitted was whether or not plaintiff sustained a compensable injury arising out of and in the course of his employment. There was no appeal on this point nor did defendants assign any error arising out of the presentation of this issue. Defendants say that since they prevailed as to the ultimate result before the Commission, they were not aggrieved by the result and hence could

not appeal. While this may be so, they could, in their brief filed in response to plaintiff's appeal, have alleged any error which it was thought might have been committed in adjudicating whether or not an injury occurred on February 12, 1958, and if so, if it arose out of the employment. Since no error on these issues was alleged and none found by the court and since the same were fully litigated and decided, the controversy as to such issues should end. The comment of the Supreme Court en banc in Hughes v. St. Louis Nat. League Baseball Club, Inc., 359 Mo. 993, 224 S.W.2d 989, seems to rule this point. There the court said: "We further hold that when, as here, the motion to set aside is sustained and the motion for new trial overruled (or if it is sustained in the alternative) and the plaintiff appeals from the judgment entered against him, then the defendant may in his brief allege error in instructions or other procedural matters raised in his motion for new trial. This is because the appellate court may consider everything preserved in the record to determine the proper disposition to be made of the case. * * * Section 847.140 gives the appellate court complete authority to consider all of these questions (raised in either motion) and to decide them as it concludes the trial court should have decided them for the purpose of giving or directing the entry of the correct judgment required to properly dispose of the case. This gives effect to the spirit of the Code, by construing it 'to secure the just, speedy, and inexpensive determination of every action' ".

The only live and undetermined issue in this case is the one on which the Circuit Court remanded the case and directed further action by the Commission, namely "for a rehearing upon the sole issue of the evaluation of the nature and extent of the disability". We believe that order in this case was proper.

The judgment of the Circuit Court reversing the Award and remanding to the Industrial Commission with directions to evaluate the nature and extent of plaintiff's disability and enter an Award accordingly is affirmed

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.