**Alois B. MILLER, Employee, Plaintiff-Respondent,**

v.

**LEVER BROTHERS COMPANY, Employer, and Aetna Casualty and Surety Company, Insurer, Defendants-Appellants.**

No. 32137.

St. Louis Court of Appeals.
Missouri.

Feb. 15, 1966.

Rehearing Denied March 17, 1966.

Robert R. Schwarz, Luke, Cunliff, Wilson, Herr & Chavaux, St. Louis, for defendants-appellants.

William A. Ens, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

These proceedings were initiated December 13, 1962, by the claimant employee, respondent here, filing with the Division of Workmen's Compensation claim for compensation, in which he alleged a back injury occurring on October 8, 1960, and in which he described the occurrence in the following language: "Stacking machine operation stopped due to cases of soap being jammed. Necessary to crawl up on machine to pull cases loose. While pulling

and tugging on case of soap to break up jam, case came loose causing employee to be twisted backwards and sideways and sustain injury to back." After hearing, the Referee awarded the claimant compensation in the net sum of $3,574.58 on the basis of six and six-sevenths weeks of healing time and a finding of twenty-five percent permanent partial disability of the whole man.

Upon review by the Industrial Commission the award of the Referee was affirmed by a divided tribunal. Upon appeal to the Circuit Court of St. Louis County the decision of the Industrial Commission was affirmed and final judgment entered thereon. This appeal followed. By Section 287.490, RSMo 1959, V.A.M.S. our review is limited to questions of law.

As he was alone at the time of the injury, the claimant was the only witness before the Referee who testified as to the facts of the occurrence causing his asserted injury. This testimony was to the effect that he was employed by the Lever Brothers Company as an electrician, engaged in construction and maintenance work; that among his other duties he was instructed to keep a palletizer, hereinafter referred to, running, that he devoted about one percent of his time to the operation of or correcting the operation of the machine.

The palletizer is a device eight feet by ten feet and ten feet high which receives cases of soap powder on conveyors from the Company's packing department. This machine arranges cases of soap in a pattern and by layers. When the cases reach the palletizer two photo-electric cells operate, one to count the cases that come in and the other to operate a rotator which turns the cases into an appropriate pattern. When the cases come into the machine a compressed air device comes into operation on all four sides and squeezes the cases closely together. On the occasion in question the claimant detoured from other activities because of the flashing of a red light and the ringing of a bell which signified that the palletizer was not operating. The machine operator was not at the machine, so claimant climbed up on the machine to see what was wrong. He discovered that the cause of the trouble was the reception of one more case of soap than the pattern called for; the photo-electric cell had miscounted and the safety switch had shut off operation. From the platform on which he stood claimant crawled through safety bars to remove the extra case and so get the machine into operation. In order to remove it, he had to stand on top of the layer of cases. He described the removal operation as follows: "I stooped over, got my hand underneath the flap of the case to pull it out and the air pressure was holding it and I gave it a real good one, and that is when I felt the pain in my back." There was no handle on the case, only a "small opening in the top, small crack in the top you could get your hand in." Claimant did not succeed in removing the extra case. He left it and got off the machine. He states that he was using all the strength he had to pull the case out but that it came only part way. "Just when I gave a tug to get it out, when it broke loose is when I felt the pain." He states that he had never done that type of work before under the same conditions. When the photo-electric cell miscounts and one less case is thrown in than the pattern calls for, the error can be readily corrected by simply pushing a button which starts the machine for the reception of one more case. Ninety percent of the counting errors are those where one *less* than the required number enters the layer. Usually there were two employees present when the machine would stop and the two together would pull a case out. Claimant recalls no other occasion when he had to release a jam by himself. Upon the return of the operator, he was told what had happened and he took care of it. Claimant finished the rest of his shift at 8 A.M. on a Saturday. When he tried to get up the next morning—Sunday—his back was "terribly sore and stiff" at the spot where he had suffered the pain the day before. On Monday claimant appeared early

at the Company dispensary, reported that he had hurt his back to the nurse who took down the information and instructed him to come in the next day to see the Company doctor, which he did. He continued to work at his job for a period of about three weeks, although his back was "terrifically painful". At that point he was taken to Deaconess Hospital by the Company's safety supervisor. The lower part of his back was operated on. [Witness did not otherwise state the nature of the operation but the records of Deaconess Hospital state the following: "Final diagnosis, herniated disc L–5 bilateral. Operation, lamenectomy and excision of disc L–5 bilateral." Date of admission is shown as 10/28/60, of discharge as November 18, 1960]. Claimant returned to work on December 15, 1960, was examined by the Company doctor and was told that he could come back to work on limited duty. After the limited period he performed the same type of work as he had done previously. Recurrent difficulties with his back caused him to receive treatment at the Company clinic where he received heat treaments from the nurse or doctor and medication from the doctor. From December 1960 until October 12, 1962, when he quit work with the employer, no period of more than two months elapsed in which he did not receive treatment at the clinic or from the Company doctor, without cost to himself. Such is the case made out by claimant's own testimony.

Upon cross-examination the following questions and answers were had:

"Q. Mr. Miller, did this case when you pulled or tugged on it, come loose, causing you to be twisted backward and sideways?

A. No, sir.

Q. You are sure?

A. I am positive, it didn't even come loose.

Q. Didn't come loose and cause you to bend backward and sideways?

A. No."

Thereupon claimant identified his signiture on a duplicate original of his claim as set forth in the first paragraph above and the following interrogation ensued:

"Q. * * * is that now how you are telling this happened?

A. Yes, I would say it was.

Q. Didn't you five minutes ago say that wasn't how it happened?

A. I said I can't remember back three years ago exactly how everything happened.

Q. You can't remember, your memory isn't too good what happened November 8, 1960?

A. I didn't say that.
* * * * *

Q. You think your memory of how this happened would have been better in November 1960 than at the present time?

A. Could very well be."
On redirect examination:

"Q. Was there any movement of your body when the pain struck you?

A. I don't truthfully recall."

Thereafter, for purposes of impeachment the appellants put into evidence paragraph 15 of the claim, although the claim was already and necessarily a part of the record. Paragraph 15 is the statement of how the occurrence happened and is quoted verbatim in the opening sentence of this opinion.

Upon his return to work on December 15, 1960, claimant signed a statement written out by the nurse on duty at the Company clinic. The pertinent parts of that statement follow:

"On Oct. 8, 1960 on or about 4 AM I was trying to release a jam-up on conveyor at Palletizer. I leaned over and started to pick up the case that was jamming * * * as I picked the case up and had part of the weigh or the full weigh I felt a very sharp pain in the center of my back

at my waist line. I did not lift the case up because of the pain. I just let go of the box and got down off of the machine. I was working alone and therefore no one saw this happen * * *. On Oct. 8, 1960, I did not have an accident of any kind. I did not slip, fall or stumble. Nor did the case of powder slip or start to slip out of my hands. Nothing unusual happened except that I felt a sharp pain in my back. I have moved these cases many many times and it is part of my regular work."

Appellants' attack upon the award as developed by their application for review before the Commission and by their brief in this Court rests upon two principal contentions: 1—that there was no substantial credible evidence upon which the award could be based and 2—that the finding of fact (adopted by the Commission) that "employee was lifting a case of soap powder out of a conveyor machine and caused injury to his back," was not such as to show an accident within the meaning of the statute. These contentions of appellants were adopted by the dissenting member of the Commission.

We do not share appellants' belief that there was a lack of substantiality in claimant's evidence. Hence what remains under the first contention is an assault upon his credibility.

Appellants' first contention rests upon the fact that claimant's cause depends upon his own testimony alone and that he had made prior statements relating to the incurring of his injury which were allegedly inconsistent with his testimony. From this appellants conclude that claimant's evidence was in hopeless conflict and hence there was "no basis for giving any weight or creditability or providing any substantial evidence or attaching any weight to the employer's [sic] testimony".

We proceed to consider claimant's statements in chronological order. The statement of December 15, 1960, set out

above, was written up by the Company nurse and the phraseology indicates that the choice of words was hers. There was no evidence of the circumstances under which the statement was taken. There is no testimony as to the reason why it was taken, but it was obviously intended as a summary of events leading up to the employee's absence and operation, executed upon his return to work. Appellants introduced the statement as an admission against interest and for purposes of impeachment. Insofar as the recitation of the events leading to the incurring of the injury is concerned there is nothing therein contradictory of claimant's testimony. Insofar as admissions are concerned, his statement that he did not have an accident is of no significance; whether or not he had an accident is a question of law as to which claimant had no competence. In view of the fact that the circumstances of taking the statement were not developed no special importance can be attached to the statement that "nothing unusual happened", for that statement seems to be associated with the negative statement regarding slipping, falling and stumbling and the slipping of the case of soap. We find in the written statement nothing inconsistent with claimant's testimony as to how his injury occurred and therefore nothing by which his credibility can plausibly be questioned.

The balance of claimant's statement of December 15, 1960, is well and adequately explained by his testimony.

Considering next the statement of claim made to the Division of Workmen's Compensation, the following sequence is noted: (1) the claim states that "While pulling and tugging on case * * * case came loose causing employee to be twisted backwards and sideways * * *;" (2) at the hearing claimant testified that the case came loose part way but that he did not fall; at a later point he testified that the case did not come loose causing him to be twisted backwards and sideways because

the case didn't even come loose; (3) upon cross-examination, when the entire contents of statement 15 was read to him he said that was how "this" happened; upon being questioned about his statement at (2) above, he replied: "I said I can't remember back three years ago exactly how everything happened"; (4) upon redirect examination claimant said that the case came loose "to a certain extent". Upon further redirect examination he was asked: " * * * when you got this pain in your back, what was your reaction?" Ans.: "I just quit and crawled off the machine." Q. "Was there any movement of your body when the pain struck you?" Ans.: "I don't truthfully recall." Claimant had previously testified that the case had come part way out when he pulled at it and that he felt the pain "just when I gave a tug to get it out, when it broke loose". Thus, the charge of incredibility based upon asserted inconsistencies rests upon discrepancies in claimant's statements as to whether or not the case came loose and as to whether or not he was "twisted backwards and sideways". It is to be noted that the injury occurred October 8, 1960, the statement to the nurse was dated December 15, 1960, the formalized claim was dated December 13, 1962 and claimant's testimony before the Referee was given on March 25–26, 1964.

■ It seems clear that the whole of the evidence relating to the case "coming loose" simply amounts to claimant saying that in the effort to release the case from the jam (and so to overcome the air pressure) it yielded only part way before the pain struck claimant and hence that he did not extricate it from the jam. As for the "twisting backwards and sideways" it is equally clear that if claimant's case depended upon such a twisting, he has not sustained his burden. But the ultimate question in this case would be whether or not he has made out a case of accident without proof of such twisting. However our immediate problem is one of credibility. If there be discrepancies between claimant's statement of claim and his testimony, they must be regarded as minor ones. It must be remembered that the claim was made more than two years after the injury was incurred and that his testimony was given about three and one-half years after the injury. If at the hearing he makes out *less* of a case on the points here considered than his claim asserts we may well attribute the difference to the frailties of human memory. In any event making out less of a case is not sufficient to throw his testimony into the obfuscating shadow of incredibility.

■ The larger issue of law remains: Did the claimant suffer an industrial accident on October 8, 1960? The statutory definition of "accident" is found in Section 287.020(2), RSMo1959, V.A.M.S.: "The word 'accident' * * * shall * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Under the enlarged concept of accident adopted by the Supreme Court of Missouri in Crow v. Missouri Implement Tractor Co., 307 S.W.2d 401, 404, 405, " * * * the general rule is that an abnormal strain causing injury to workman may be classified as an accident" and "An abnormal strain may, therefore, be classified as an accident, even though not preceded or accompanied by a slip or a fall." Such a statement by-passes any specific consideration of the statutory requirement that there must be an unexpected or unforeseen event happening suddenly and violently and, in and of itself, equates abnormal strain to an unexpected or unforeseen event. And such was the holding of the Court in Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65, quoted approvingly in Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, 297.

Plainly this case was tried before the Referee and on oral argument before the Commission on the theory that claimant

had sustained an abnormal strain in the course of his employment. The form in which the findings of facts are made leaves much to be desired. The first finding of "fact" is that there was an accident. A subsequent finding states in the barest detail that the employee was lifting a case of powder and caused injury to his back.

■ The right to compensation depends upon the happening of an accident. But the determination of accident or not turns logically upon the preliminary finding of certain facts after which application of the law can be made. Here, no evidence was offered by appellants; the matter of claimant's credibility having been settled, the award which the Commission should have made becomes a question of law. Where, as here, the Referee and the Commission find that an accident occurred —or as it is sometimes referred to, make a finding of the *ultimate* fact—without making an expressed determination of the preliminary facts and where the finding of accident is reached by an interpretation or application of law, the case must be reviewed upon the whole record. This does not mean that an appellate court can substitute its judgment for that of the Commission. The review of the whole record is directed solely to a determination of whether there was an error of law committed by the Commission. The Court's review is by the statute limited in this manner: "The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: * * * (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award." Sec. 287.490, RSMo1959, V.A.M.S. By so limiting the scope of review, the statute requires that the Commission's award stand unless an error of law be shown.

Where there is a dearth in the findings of fact as here (except for the "ultimate fact") it must be concluded that the Commission reviewing the evidence discerned therein a definite showing of abnormal strain (the case was obviously tried on that theory alone), resulting in the described injury, and hence determined, in accordance with statutory definition, that claimant thereby suffered an accident.

Proceeding to the consideration of the occurrence as a whole, no doubt can be entertained that the claimant's injury was incurred in the course of his employment— he was instructed to keep the machine running. He was not injured in the course of performing a routine job in a routine way; the very job he was doing was not one of a uniformly or consistently repetitive character. While the type and the locale of the work which he was doing fell within what may be designated as his assigned work since it was in accordance with instructions received, it was still work which he performed very infrequently. The circumstances leading up to the occurrence were unusual. Claimant's estimate that he devoted one percent of his time to the process of unjamming the machine was not rebutted. Ninety percent of the unjamming operations involved a situation where the error of 'the machine consisted of placing one too few cases in the frame; here the machine threw one too many cases into the pattern. In the former situation the loose pattern could be rectified by readily shifting a stray case and by merely pushing a button to run another case in; here considerable physical effort was required to extricate the surplus case. On previous occasions claimant had been an aide to the operator of the machine; here claimant was on his own. Claimant recalled no previous occasion when he had to release a jam by himself.

Does the record show an abnormal strain from which claimant's injury resulted?

More properly put, the crucial question is: Was there sufficient competent evidence from which the Commission could find that claimant suffered an abnormal strain resulting in the injury and hence could conclude as a matter of law that he suffered an accident, thereby justifying the award? The situation in which claimant found himself was an unusual one; he was engaged in a task the like of which he had not experienced. In trying to remove the extra case against the pressure of the compressed air, "Just when I gave a tug to get it out * * * is when I felt the pain" and "I gave it a real good one and that is when I felt the pain in my back." As to the effort exerted claimant stated: "I was using all the strength I had to get it out." It is quite evident that there is no norm by which to measure the extent of claimant's physical exertion because the particular task was not a repetitive one, he had never before engaged in the operation of removal under the same conditions, and under different but milder conditions he had been but one of a team of two who customarily handled the cases in the event of a miscount. If comparison be made with the physical effort required to be exerted under the latter conditions the muscular exertion here can well be labelled abnormal. It seems clear that the strain here was greater than any known normal strain in any part of claimant's routine occupation.

From a review of the whole record we find that there was sufficient competent evidence to warrant the making of the award.

The judgment of the Circuit Court of St. Louis County is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.