Lewis MASON, Employee, Plaintiff-Appellant,

v.

F. W. STRECKER TRANSFER COMPANY, Employer, and Hartford Accident and Indemnity Company, Insurer, Defendants-Respondents.

No. 32342.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1966.

James B. Herd and Deeba, DeStefano, Sauter & Herd, St. Louis, for plaintiff-appellant.

Edmund J. Barker, St. Louis, for defendants-respondents.

WOLFE, Presiding Judge.

This concerns a claim filed by Lewis Mason with the Division of Workmen's Compensation of the Department of Labor and Industrial Relations. The claimant sought compensation for injuries arising out of an alleged accident which occurred while he was working for F. W. Strecker Transfer Company. A referee of the Division of Workmen's Compensation heard the claim and found that the employee did not sustain an accident arising out of and in the course of his employment with F. W. Strecker Transfer Company, and denied compensation. Application for a review by the full Commission was filed by the claimant and that review resulted in the Commission affirming and adopting the award of the referee. This was followed by an appeal by claimant to the circuit court which affirmed the award of the Commission. The claimant then appealed to this court from the judgment of the circuit court affirming the award.

There is but one point before us on this appeal and that is whether or not the evidence supports the finding that the claimant did not suffer an accident as contemplated by the Missouri Workmen's Compensation Act.

The F. W. Strecker Transfer Company is in the business of making local freight deliveries. The freight which it delivers is brought to its loading dock by other freight carriers. There it is checked in, inspected and signed for. After that it is placed in Strecker's warehouse for delivery by their truck to the consignee.

Claimant, Mason, was receiving clerk for the transfer company and had been working in that capacity for about ten years. Prior to that he had worked for the company as freight handler. He testified that as receiving clerk it was his duty to receive, check the freight and sign for it. After that he put it in the warehouse and sorted it by the area to which it was to be delivered. He was required to do some manual lifting in his work but most of this consisted of lifting cartons which did not weigh in excess of fifty pounds. He did, however, move some large drums of material that

weighed five hundred pounds. For these he had a special hand truck which gave him greater leverage to tilt the truck to a rolling position than the ordinary hand truck.

He stated that on May 2, 1962, he was working at his usual station but did not have much to do. At about 4:00 P.M. his employer asked him to get a truckload of freight from a railroad loading dock at Tenth and Poplar Streets in the City of St. Louis and bring it back to the company's loading dock. He was taken to the Poplar Street dock in his employer's station wagon. When he arrived there he found the truck he was to bring back was not fully loaded.

The freight being loaded upon the truck consisted of printing paper. He stated that it was in rolls about three feet in diameter and eighteen to twenty-four inches in width. He said that each roll weighed between one hundred fifty and two hundred pounds. Two men were working at loading the truck but there were three rolls of paper still on the dock and one in the freight car in which the rolls had been delivered to the dock. He said that he rolled the one in the freight car out onto the dock himself. There were two freight handlers there who were engaged in loading the delivery truck. One was named Meyers and the other was named Jones. They had a hand truck upon which the rolls of paper were placed and wheeled down to the delivery truck which claimant was to drive back to the warehouse.

These rolls were resting on their curved side. In order to get them on the hand truck claimant and Meyers shoved one roll over on a 2x4 board so that as it rested there one side of the roll was sufficiently high above the floor of the dock to permit the front end of the hand truck to be pushed under it. Two more rolls were placed on top of the first roll by claimant and Meyers. Each of these were lifted by the claimant with the help of Meyers and placed one on top of the other. After the three rolls were stacked Meyers then got the hand truck and pushed the front end of it under

the stack so that the body of the hand truck was upright against the cylindrical stack consisting of the three rolls. The claimant estimated the stack to have been four feet or better in height at that time. With Meyers manning the hand truck, he and Jones lifted the fourth roll to the top of the stack. It was their intention to then push the load back toward the body of the truck so that the front part of the hand truck with the load which rested upon it would lift up so that the weight would rest upon the wheel of the truck and the truck could be rolled.

While claimant and Jones were lifting the last roll to the top of the stack, claimant felt a severe pain in the lower part of his back. He went over to a boxcar and leaned against it for a while and Meyers and Jones finished loading the four rolls into the delivery truck. The claimant was asked certain questions and gave his answers as follows:

"Q As the two of you were trying to lift this on top of the stack was there anything at all unusual about that?

"A Yes, sir, there was.

"Q What was that?

"A I got injured didn't I.

"Q I am asking you if there was anything unusual that happened. We know that you say your back started hurting you but was there anything of an unusual nature that happened other than your back starting to pain?

"A I don't understand you was there anything unusual, all we were doing was working and when you're working like that you don't have any idea of anything happening.

"Q Your foot didn't slip, did it?

"A No.

"Q Your hand didn't slip, did it?

"A No.

"Q The other fellow didn't throw the weight on you, did he?

"A I couldn't say he did, I put everything I had with it.

"Q So the only thing unusual that happened at that time was that you felt this pain in your low back?

"A That's right."

The claimant drove the delivery truck back to the warehouse but he found it necessary to stop en route because of pain in his back and leg. He was treated and later was sent to a hospital for a week. He had no difficulty in doing his work at the Strecker Transfer Company at the time of trial. There was medical testimony on behalf of the claimant and the employer but there is no need to elaborate upon this as the Commission never reached the point of considering it, after finding that the claimant suffered no accident within the contemplation of the Workmen's Compensation Law.

 There is no dispute presented by the evidence before us relating to the activity in which the claimant was engaged at the time his back was injured. Because of this the question of whether or not the injury was an accident is a matter of law, which we rule without regard to the general rule, which requires appellate courts to defer to the Commission's findings, where the evidence is conflicting and the findings of the Commission are not contrary to the overwhelming weight of the evidence. Corp v. Joplin Cement Co., Mo., 337 S.W. 2d 252; Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292.

The meaning of "accident" as used in the Workmen's Compensation Law is defined by § 287.020(2), RSMo 1959, V.A.M.S. It states:

"The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

 The definition has been held in many cases to be broad enough to classify an unusual or abnormal strain as an accident. Crow v. Missouri Implement Tractor Company, Mo., 307 S.W.2d 401; Merriman v. Ben Gutman Truck Service, Inc., supra; Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61; Miller v. Lever Brothers Company, Mo.App., 400 S.W.2d 625. In all of those cases there was some evidence of an unusual or abnormal strain. The distinction between that line of cases and those cases where one suffers an injury in the course of his usual work and no abnormal or unusual strain is present was discussed by this court in Baker v. Krey Packing Company, Mo. App., 398 S.W.2d 185. It would serve no useful purpose for us to again distinguish the fact in the cases cited from those present in this and like cases.

There is no evidence here of any slip, fall or other mishap which caused the injury of which claimant complains. He rests his claim for compensation solely on the theory that he suffered an unusual strain. There is no evidence that there was anything unusual in the manner in which he was working or the way he was assisting in lifting the roll of paper. He said there was nothing unusual except that his back was hurt. Most manual work requires some strain and the work of handling freight requires considerable. Not infrequently injuries occur in the normal course of work without any more strain than always employed to do the work. If compensation were allowed where no unusual or abnormal strain was present then the injury itself would be classed as an accident, regardless of how it occurred, and such is not the law. There is no evidence to support the theory that claimant was subjected to an unusual or abnormal strain and we therefore conclude that the Commission was correct in holding that there was no accident within the meaning of the Workmen's Com-

pensation Act. Baker v. Krey Packing Company, supra; Hall v. Mid-Continent Manufacturing Company, Mo.App., 366 S. W.2d 57; Flippin v. First National Bank of Joplin, Mo.App., 372 S.W.2d 273.

The judgment of the circuit court affirming the award of the Commission is affirmed.

ANDERSON and RUDDY, JJ., concur.