Victor R. SMITH, Plaintiff-Appellant,

v.

Robert W. PLASTER, Defendant-Respondent.

No. 9436.

Missouri Court of Appeals,
Springfield District.

Jan. 3, 1975.

Motion for Rehearing or to Transfer Denied
Jan. 16, 1975.

Application to Transfer Denied
March 10, 1975.

Daniel, Clampett, Ellis, Rittershouse & Dalton, Paul D. Rittershouse, Springfield, for plaintiff-appellant.

Neale, Newman, Bradshaw & Freeman, O. J. Taylor, Bradford A. Brett, Springfield, for defendant-respondent.

STONE, Judge.

In this proceeding under the Missouri Workmen's Compensation Law, the referee found the contested issues in favor of Victor R. Smith, the employee, and against Robert W. Plaster, the employer,[1] and awarded benefits in the aggregate sum of $14,463.74; and, on review by the Industrial Commission, the referee's findings and award were affirmed in all respects. However, on appeal the Circuit Court of Greene County, while recognizing the familiar rules of judicial review in workmen's compensation cases [Merriman v. Ben Gutman Truck Service, Inc., 392 S. W.2d 292, 296–297 (Mo.1965) ], concluded in a scholarly six-page memorandum opinion that the employee had not sustained an "accident" within the statutory definition of that term [§ 287.020(2) ],[2] and accordingly reversed the Industrial Commission. (All statutory references herein are to RSMo 1969, V.A.M.S.) From that adverse judgment of the circuit court, the employee brings the case to us.

For some time prior to February 6, 1969, the date of the alleged accident, claimant Smith had been one of several workmen engaged in construction of a residence for Plaster on the Empire Ranch in Laclede County, Missouri. Claimant, then fifty years of age, was working as a mason, the trade he had followed for more than thirty years. During the forenoon of the above-stated date, he began to experience chest pains and shortness of breath and to feel "quite chilly and real sweaty." When he continued to suffer "a lot of pain" after lying in a nearby garage for some thirty minutes, he was taken to his home in Lebanon and shortly thereafter to a hospital in Springfield, where the examining physician found that claimant had sustained an acute anterior myocardial infarction, medically explained as the death of muscle tissue in the heart due to occlusion or complete blockage of an artery supplying blood to the heart, and commonly known as a heart attack. The primary issue has been and is whether claimant sustained an "accident" within the statutory meaning of that term.

1. The employer's liability under the Compensation Law was not insured, but there is no complaint here concerning the finding of the referee, affirmed by the Industrial Commission and by the circuit court, that the employer and the employee were under the law.

2. "The word 'accident' as used in this chapter [287] shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

A day or two prior to February 6, claimant and a fellow mason, Wayne Showler, had constructed a rock wall on a "steep slope" or downgrade north of the residence to protect some native oak trees from a dirt fill on the uphill side. After affording at least twenty-four hours for the mortar in this rock wall to "set-up," the wall was to be reinforced and protected by concrete poured "behind the rock [wall], between the rock [wall] and the dirt fill." Orvel H. "Slim" Story, Plaster's employee who was in complete charge of construction, "ordered out concrete" to be delivered in a ready-mix truck on the morning of February 6. It had been anticipated that the truck would back around and down the hill to a concrete landing at the top of a flight of some eight or nine steps, from which location laborers would carry the concrete from the truck down the steps to the masons, claimant and Showler, both of whom would have poured the concrete as it was brought to them. However, the universal joint went out of the truck and it "got stuck" on top of the hill, which necessitated a change in the entire operation. It was particularly important that the concrete be handled and poured with dispatch because "it was supposed to turn cold that night" and calcium chloride, a quicksetting agent, had been added to the concrete in the truck. For that reason (and, so witness Showler testified, in response to Story's request that the masons "help unload" the concrete "to keep it from setting up in the truck") Showler took charge of bringing the concrete in wheelbarrows from the truck around and down the hill to the landing at the top of the steps, and claimant assumed responsibility for getting the concrete down the steps and pouring it in place. On the landing at the top of the steps, the concrete was transferred from the wheelbarrows into five-gallon buckets. Each such bucket of concrete weighed "approximately from eighty to a hundred pounds." The two laborers carried some of the buckets of concrete down the steps to the location where it was to be poured. However, claimant made five or six trips from the landing down the steps, carrying on each such trip two buckets of concrete "because [that] balanced me out better," and he poured and emptied not only the concrete he carried from the landing but also all of that carried by the laborers—in the aggregate, approximately one cubic yard of concrete weighing about 2,700 pounds. In short, claimant opined that he had worked "at least three times as hard" that morning as he had previously.

Claimant's description of the pouring process was detailed and graphic. "[D]irt will not dig up and down straight or perpendicular . . . the edges of it was sloped back away from these rocks and we would have to dump this concrete very slowly, we couldn't dump a full bucket of concrete, just as you dump it you had to reach over in a strain and dump this concrete slowly as it would go in behind these rocks, you couldn't go in very fast because we had lost some walls before [where] the laborers had dumped some concrete . . . ." In further elaboration as to "just how [he] had to stand in order to dump the concrete in behind the wall," claimant said "I had to lean over . . . then you could reach out and dump your five-gallon bucket of concrete . . . around the rock, in behind the rock . . . ."—"just as you are reaching out almost as far as you can reach . . . [you] turn a five-gallon bucket of concrete over edgewise and let it drip very slow."

As employer's counsel here emphasize, claimant readily conceded that during his thirty years as a mason he had "been involved in some pretty heavy work," ofttimes had raised into place stones weighing as much as one hundred pounds, sometimes had lifted buckets of mortar as high as four feet and dumped the contents behind retaining walls, on "many occasions" had stood "in somewhat awkward position," and "frequently" had worked on ground "a little bit slanted or unlevel." But, when pressed by employer's counsel to agree that "you were standing on more or less level ground and pouring [concrete] into a hole

in the ground is what it amounts to," claimant emphasized "as far as you can reach." And in the course of his interrogation claimant insisted that previously he had never poured buckets of concrete where he had to reach out "like that"— "that's the first job like that I ever done." In pouring buckets of concrete on this occasion, claimant declared "absolutely there was a strain . . . it's hard enough to carry a hundred pounds against you but you take a hundred pounds out away from your body and there's always a strain on there."

Although claimant frankly declared that "I'm not for sure the exact time [the chest pain] came on as I was working there, because I was under that strain getting this in there," he thought the pain started about 10 A.M. More importantly, his activity at the onset of his pain and heart attack was established by the question, "where were you when you had the heart attack," and his answer, "on the job, we was pourin' concrete behind some masonry wall that we had laid."

Dr. Carle H. Schroff, the physician who examined claimant at the hospital in Springfield on the date of his heart attack and thereafter cared for him, testified that in his opinion there was a causal connection between the exertion of claimant in carrying and pouring the concrete and the myocardial infarction. And, the employer's witness, Dr. Phillip Carr, who examined claimant some fifteen months later, expressed the opinion "that the precipitating factor in [claimant's] infarction was the exertion he was undergoing" at the time.

In affirming the findings and award of the referee, the Industrial Commission specifically found "that carrying the buckets of raw concrete and slowly pouring the concrete in an extended position was an abnormal strain which caused the employee to suffer a myocardial infarction, thereby suffering an accident within the meaning of Section 287.020(2)," and in support of that finding quoted the judicial holding that " '[i]f claimant suffers an injury resultant from an "abnormal strain" and while he is engaged in doing something different from his normal working procedure, it is an accident under the Act and compensable.' " Herbert v. Sharp Brothers Contracting Co., 467 S.W.2d 105, 108 (Mo.App.1971), where an abnormal strain had resulted in an acute myocardial infarction; Closser v. Fleming Company, 387 S.W.2d 194, 198(4) (Mo.App.1965).

In Crow v. Missouri Implement Tractor Co., 307 S.W.2d 401 (Mo. banc 1957), the Supreme Court of Missouri formulated, adopted and promulgated the so-called unusual or abnormal strain doctrine, an "enlarged concept of accident" which, as appropriately observed by the St. Louis Court of Appeals per Commissioner (formerly Professor) Townsend in Miller v. Lever Brothers Co., 400 S.W.2d 625, 629 (Mo. App.1966), "by-passes any specific consideration of the statutory requirement [in § 287.020(2) defining "accident"] that there must be an unexpected or unforeseen event happening suddenly and violently and, in and of itself, equates abnormal strain to an unexpected or unforeseen event." Subsequent to *Crow,* the unusual or abnormal strain doctrine has been recognized in numerous Missouri cases, of which ten are cited in instant claimant's brief [3] and an

---

3. Merriman v. Ben Gutman Truck Service, Inc., 392 S.W.2d 292 (Mo.1965) ; Davies v. Carter Carburetor, Division ACF Industries, Inc., 429 S.W.2d 738 (Mo.1968) ; Williams v. Anderson Air Activities, 319 S.W.2d 61 (Mo.App.1958) ; Brotherton v. International Shoe Co., 360 S.W.2d 108 (Mo.App.1962) ; Flippin v. First National Bank of Joplin, 372 S.W.2d 273 (Mo.App.1963) ; Closser v. Fleming Co., 387 S.W.2d 194 (Mo.App.1965) ; Miller v. Lever Bros. Co., 400 S.W.2d 625 (Mo.App.1966) ; Sita v. Falstaff Brewing Corp., 425 S.W.2d 487 (Mo.App.1968) ; Herbert v. Sharp Bros. Contracting Co., 467 S.W. 2d 105 (Mo.App.1971) ; Wilson v. Kansas City, 479 S.W.2d 135 (Mo.App.1972).

additional two are cited in instant employer's brief.[4] After examining not only all of those cases but also an additional eighteen in which Crow has been cited to date, we have concluded that in determination of this appeal no good purpose would be served by our discussion of or reference to any of those cases other than the most recent one, namely, Snuggs v. Steel Haulers, Inc., 501 S.W.2d 481 (Mo. banc 1973), handed down shortly after the circuit court entered its judgment in the instant case.

The issue in *Snuggs*, as capsuled in the first sentence of the opinion, was "whether job-connected fatigue, tension, anxiety, and stress, extended over a 27 hour period, can be considered an abnormal strain constituting an accident under the Workmen's Compensation Act." The determination of the Industrial Commission that it "did not constitute 'an accident within the meaning of the Missouri Workmen's Compensation law'" [501 S.W.2d at 484] was affirmed by the circuit court. The Missouri Court of Appeals, Kansas City District, held to the contrary and, on transfer, the Supreme Court per Seiler, J., with three judges dissenting, concluded [501 S.W.2d at 485] "that the claimant sustained an accident as a matter of law under the statute [§ 287.-020(2)]" and the cases cited in the opinion, including *Crow* and Merriman v. Ben Gutman Truck Service, Inc., 392 S.W.2d 292 (Mo.1965).[5]

■ In the case before us, the referee in the first instance and the Industrial Commission on review found, as hereinbefore noted, that "carrying the buckets of raw concrete and slowly pouring the concrete in an extended position was an abnormal strain which caused the employee to suffer a myocardial infarction, thereby

suffering an accident within the meaning of Section 287.020(2)." We need not and do not declare that the quoted finding and the resulting award to the employee were compelled as a matter of law. For, although on judicial review of the findings and award of the Industrial Commission in a workmen's compensation case the circuit court in the first instance, and this court on further appeal, may determine whether, upon the entire record, the commission reasonably could have made the findings and award under consideration, this does not mean that either court is authorized to substitute its own judgment on the evidence for that of the commission, but rather that a reviewing court may set aside such findings and award only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Bradshaw v. Richardson Trucks, Inc., 467 S.W.2d 945, 947 (Mo. banc 1971); Brown v. Missouri Lumber Transports, Inc., 456 S.W.2d 306, 307 (Mo.1970); Selvey v. Robertson, 468 S.W.2d 212, 213 (Mo.App.1971). It is immaterial what the findings and conclusion of the circuit court or of this court might have been if sitting as the trier of the facts [Cotton v. Voss Truck Lines, Inc., 392 S.W.2d 428, 434 (Mo.App.1965); Slider v. Brown Shoe Co., 308 S.W.2d 306, 310(6) (Mo.App.1957)], since on judicial review the inquiry is whether, upon the entire record, the commission reasonably could have made the findings and award under consideration, *not* whether a contrary conclusion would have been permissible. Dickhaut v. Bilyeu Refrigerated Transport Corp., 441 S.W.2d 54, 58 (Mo. 1969); Lathrop v. Tobin-Hamilton Shoe

4. Baker v. Krey Packing Co., 398 S.W.2d 185 (Mo.App.1965); Mason v. F. W. Strecker Transfer Co., 409 S.W.2d 267 (Mo.App. 1966).

5. Because of the fact that, in holding the employee in the instant case had not sustained an accident within the statutory definition, the circuit court relied upon our case of Flippin v. First National Bank of Joplin, 372 S.W.2d 273 (Mo.App.1963), we note particularly that the last paragraph of the *Snuggs* opinion "point[ed] out that to the extent that *Flippin* . . . is not consistent with the view here expressed, it should no longer be followed." 501 S.W.2d at 486.

Mfg. Co., 402 S.W.2d 16, 23(8) (Mo.App. 1966); Johnson v. Simpson Oil Co., 394 S.W.2d 91, 97(12) (Mo.App.1965); Gregory v. Lewis Sales Co., 348 S.W.2d 743, 747(5) (Mo.App.1961).

█ With regard for the foregoing rules of judicial review and recognition of the current controlling concept of accident as enlarged in *Crow* and inflated in *Snuggs,* we are constrained to conclude that on judicial review we must honor and affirm the commission's finding that claimant Smith sustained an accident within the meaning of § 287.020(2).

█ Additionally, the employer vigorously insists that in any event this proceeding is barred by § 287.420 [6] because claimant did not give the employer "written notice of his alleged injury as required by that statute." However, neither § 287.420 nor the decisions construing it unqualifiedly require an injured employee to give written notice of injury to the employer as a precondition to maintaining a claim for compensation. Snow v. Hicks Bros. Chevrolet, Inc., 480 S.W.2d 97, 101(4) (Mo. App.1972). Rather, the cited statute empowers the commission to honor a claim if it finds there was good cause for failure to give such written notice of injury *or* that the employer was not prejudiced by failure to receive it. Beatty v. Chandeysson Electric Co., 238 Mo.App. 868, 878, 190 S.W.2d 648, 653(4) (1945). And, since the obvious purpose of notice is to enable the employer to protect his interests by prompt investigation of the alleged accident and treatment of any resulting injury [Brown v. Douglas Candy Co., 277 S.W.2d 657, 662(2) (Mo.App.1955) ], evidence disclosing that the employer had *actual timely no-*

*tice or knowledge of a potentially compensable injury* [Reichert v. Jerry Reece, Inc., 504 S.W.2d 182, 187 (Mo.App.1973); Snow v. Hicks Bros. Chevrolet, Inc., supra, 480 S.W.2d at 103(10); Lawson v. Vendo Co., 353 S.W.2d 113, 116 (Mo.App.1961); 3 Larson, Workmen's Compensation Law, Chap. XV, p. 1] makes a prima facie showing that the employer was not prejudiced by failure to receive a timely written notice and shifts onto the employer the burden of proving that, notwithstanding such actual notice or knowledge, he nevertheless was prejudiced by not having received a written notice. Reichert v. Jerry Reece, Inc., supra, 504 S.W.2d at 187(12).

In the case at bar, the first *written* notice of injury was the claim for compensation filed on April 11, 1969, the sixty-fourth day after the date of the alleged accident, so the issue concerning notice became one as to whether or not employer Plaster had *actual timely notice or knowledge of a potentially compensable injury* on or before Saturday, March 8, 1969, the thirtieth day after the accident on February 6, 1969. Although Plaster himself was not on the construction site on February 6, his employee in charge of construction, Orvel H. "Slim" Story, was on the site that day, saw claimant Smith lying in the garage that morning, and knew that after "he stayed there about an hour or so . . . someone took him home." On direct examination by employer's counsel, Story initially stated "oh, I can't remember what he [Smith] said . . . . he didn't really say too much of anything to me." After similarly commenting during cross-examination that "I asked him what was the matter and he didn't say too much," Story volunteered that "I thought he just got kinda over-het or something and was sick . . . . "

6. "No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the division or the commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby."

However, witness Wayne Showler, the other stonemason on the job that morning, testified that claimant Smith "came up out of there and said something had happened to him and he didn't look too good, he couldn't hardly get his breath and I helped him up to the top of the hill and he went in the garage and laid down on some plywood"; and, when Smith "thought he would be all right to be moved . . . *we* sent him into town . . . to go to the doctor and they brought him on to Springfield." (Emphasis ours) To counsel's inquiry, "when you say 'we,' was Orvel Story there at the time," Showler responded "uh-huh, yes, he was." And, to the succeeding question "was Orvel Story there at the time that Victor [Smith] talked about something happening to him and not being able to get his breath and all that . . . was Mr. Story there at that time," the witness again declared, "yes, he was."

 Employer Plaster testified, in essence, that within two or three days after February 6, 1969, Story had reported to him that Smith had gone home from work sick and had been taken to the hospital and that "it had been diagnosed as a heart attack." Of course, employer Plaster also was charged with such notice or knowledge as his trusted employee Story, who had been placed in complete charge of construction, may have had concerning a potentially compensable injury suffered by claimant Smith on that construction job. See Jones v. Purity Textiles Corp., 328 S. W.2d 714, 717(3) (Mo.App.1959); Lawson v. Vendo Co., supra, 353 S.W.2d at 119(7). However, Plaster made no investigation and insisted he "had no reason" to do so, because "never in [his] wildest imagination could [he] consider it to be job oriented . . ." even though he recently had suffered a heart attack himself while at work.

Claimant was discharged from the hospital in Springfield on February 27, 1969. During the evening of February 28, claimant Smith's wife telephoned Story and inquired of him "about compensation." Pursuant to Story's direction that she contact employer Plaster, "within the following week" she called his office at "Empire Gas in Lebanon";[7] and, being informed that he was "not in at the time," she left word for him to return the call. When she did not hear from him shortly, she "placed the call again" but still did not reach him. Plaster testified that "records kept in [his] office or Empire Gas Corporation office" showed that "I tried to return it [Mrs. Smith's call] on March 6 and didn't get her and I didn't get a chance to call her again until Monday, March 10." In cross-examination of Mrs. Smith, the inquiry of employer's counsel whether "when you talked with Mr. Plaster you asked him . . . what insurance coverage he might have" elicited the response "[a]nd compensation if he had any, yes, sir." According to Mrs. Smith, "Mr. Plaster referred me to his insurance agency . . . he said he really didn't know what he had."

On the evidence adduced before him, the referee made detailed and comprehensive findings of fact and rulings of law, including a specific finding that employer Plaster "had actual notice of employee's injury." On review, the Industrial Commission approved and adopted the referee's findings of fact and conclusions of law in toto, also declared inter alia "[t]here is competent and substantial evidence that the employer had actual notice of the employee's accident," and affirmed the award to claimant Smith.

 Able counsel for employer Plaster have filed a comprehensive brief in which they recognize that an employer's actual timely knowledge of "an accident

---

7. Plaster identified himself as president of Empire Gas Corporation of Lebanon, Missouri, whose operations in the LP gas busi-

ness were conducted in a "large number of states" by and through some 200 corporate subsidiaries.

and consequent injury" is sufficient to show that the employer was not prejudiced by the employee's failure to give the statutory written notice. But counsel declare "the actual knowledge cases require" that an employer must have been "aware (1) that the employee was injured, and (2) that the injury resulted from an 'accident arising out of and in the course of his employment,'" in short that the accident was a compensable one, thus mistakenly construing the Missouri cases in this category as predicating recovery upon an employer's opinion or persuasion, prior to the administrative determination, that the injury was a compensable one. And, although conceding that employer Plaster had actual timely knowledge of employee Smith's injury, counsel assert "[i]t is entirely credible that Mr. Plaster, as he testified, would never, in his 'wildest imagination,' have considered a heart attack to have been job oriented, even though he had recently suffered one himself while at work." However, as we have heretofore pointed out, the settled principle announced and applied in our Missouri decisions is that actual timely notice or knowledge of a *potentially compensable* injury [Reichert v. Jerry Reece, Inc., supra, 504 S.W.2d at 187; Snow v. Hicks Bros. Chevrolet, Inc., supra, 480 S.W.2d at 103(10); Lawson v. Vendo Co., supra, 353 S.W.2d at 116] makes a prima facie showing that the employer was not prejudiced by failure to receive a timely written notice and shifts onto the employer the burden of proving the contrary. Reichert v. Jerry Reece, Inc., supra, 504 S.W.2d at 187(12). With counsel for employer Plaster appropriately acknowledging in their brief that, since the 1957 banc opinion of the Supreme Court in *Crow,* supra, "a heart attack may be a compensable injury," we are satisfied that the trier of the facts reasonably could have found employer Plaster had actual timely knowledge that claimant Smith had suffered a potentially compensable injury.

Considered with appropriate respect for the previously-stated principles applicable upon judicial review of the findings and award in a workmen's compensation case, we believe the foregoing findings in this case that the employer had actual notice of the employee's accident and injury must be accepted here. Although neither the referee nor the commission made a specific finding that employer Plaster was not prejudiced by nonreceipt of a timely *written* notice, the general finding and award in favor of claimant Smith necessarily implied the finding of every fact necessary to support it, including that of no prejudice [Reichert v. Jerry Reece, Inc., supra, 504 S.W.2d at 188(13); Klopstein v. Schroll House Moving Co., 425 S.W.2d 498, 505(10) (Mo.App.1968) ]; and, upon independent examination and careful consideration of the entire record, we are convinced that the employer was in no wise prejudiced by nonreceipt of a *written* notice.

Being impelled to the conclusion that the award under attack must be sustained on judicial review, it is the order and judgment of this court that the judgment of the circuit court be set aside and for naught held, and that the cause be remanded to the circuit court with directions to enter judgment affirming the final award of the Industrial Commission.

BILLINGS, C. J., and HOGAN and TITUS, JJ., concur.

FLANIGAN, J., not participating.